**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
DEBBIE COFFEY,                      )
                                    )
          Plaintiff,                )
                                    )
          v.                        ) Civil Action No. 16-653 (EGS)
                                    )
BUREAU OF LAND MANAGEMENT,          )
                                    )
          Defendant.                )
_____)

## MEMORANDUM OPINION

   Plaintiff Debbie Coffey submitted a request under the
Freedom of Information Act ("FOIA") to obtain certain
communications between the Bureau of Land Management (the
"Bureau" or "BLM") employees and individuals or organizations
interested in purchasing wild horses or burros under the
agency's management. Approximately five months after Ms. Coffey
submitted her request, the Bureau produced to her roughly 670
pages of records it deemed responsive to the request. After
reviewing the records she received, Ms. Coffey filed an appeal
with the agency and, five months later, this lawsuit alleging
violations of the Freedom of Information Act, 5 U.S.C. § 552.
Both parties now move for summary judgment. For the reasons set
forth below, and because the Court will order additional
searches and/or the filing of additional declarations by the

Bureau, the Court stays further proceedings and holds in abeyance a final ruling on the pending motions.

I.     **BACKGROUND**

The Bureau of Land Management is charged with protecting and managing populations of wild horses and burros (i.e., wild donkeys) on public lands pursuant to the 1971 Wild Free-Roaming Horses Act of 1971, 16 U.S.C. §§ 1331-1340. *Coffey v. Bureau of Land Mgmt.*, No. 16-CV-508, 2017 WL 1411465, at *1 (D.D.C. Apr. 20, 2017). Wild horses and burros live on segments of public land that cover 31.6 million acres across 10 western states, with the Bureau of Land Management tasked with overseeing 26.9 million acres of that land. *See* Bureau of Land Management, Wild Horse and Burro Program website, available at https://www.blm.gov/programs/wild-horse-and-burro (last visited on September 29, 2017). As part of the Bureau's efforts to sustain populations of wild horses and burros at a level that will "achieve and maintain a thriving natural ecological balance on the public lands," 16 U.S.C. § 1333, the agency created the Wild Horse and Burro Program. Among other tasks, the Wild Horse and Burro Program oversees sales and adoptions of these animals to private individuals and organizations that will provide "good homes and humane care." Pl.'s Mot. for Summ. J. Ex. A at 1, ECF No. 18-1. An individual or group seeking to purchase more than four animals in a six-month period is "required to submit a

2

proposal detailing where animals will be kept, plans to provide humane care including adequate forage, water, hoof and veterinary care, fencing, and the intended use for the animals." *Id.* at 6.

Ms. Coffey is the Vice President and Director of Wild Horse Affairs for the Wild Horse Freedom Federation, a federally-registered 501(c)(3) non-profit organization dedicated to both educating the public on wild horse and burro issues and advocating for the protection and welfare of wild horses and burros on America's public lands. *See* Pl.'s Mot. for Summ. J., Declaration of Debbie Coffey ("Coffey Decl.") ¶ 2, ECF No. 18-1. Ms. Coffey has a particular interest "in what happens to our wild horses & burros," including with respect to "wild horses being sold by the BLM." *See* Def.'s Mot. for Summ. J, Declaration of Ryan Witt ("Witt Decl.") Ex. 1 ("FOIA Request") at 2, ECF No. 15-3. Unable to find the information she sought about "the activities and operations regarding the sale and disposition of the wild horses & burros" in public sources or on the Bureau's website, Ms. Coffey submitted the FOIA request at issue here. *Id.* at 3.

In her request, which she sent to the Bureau via email on April 27, 2015, Ms. Coffey sought communications between Bureau employees and individuals or organizations interested in buying or selling wild horses and burros. *Id.* at 1. In particular, Ms.

Coffey requested "all emails, faxes, letters, and notes from telephone calls" between any Bureau employee who had "done work in the capacity of" a "Marketing Specialist," "Supervisory Marketing Specialist," or "Outreach Specialist" for the Bureau's Wild Horse and Burro Program and any individual or organization that were "proposals for selling/buying wild horses and burros (whether or not the proposals ever came to fruition)." *Id.* The request further specified that Ms. Coffey sought records that included the words "wild horses, wild burros, horses, burros, sales, special sales, buy, buying, sell, selling, transportation, long term holding, short term holding, holding facility, transportation and truck." *Id.* Finally, the request specified that it sought communications made by, among others, Bureau employees Sally J. Spencer and Debbie Collins, both of whom, based on Ms. Coffey's knowledge, had served in marketing positions in the Wild Horse and Burro Program. *Id.* She provided the email addresses and other identifying information for both these employees. *Id.* at 1-2.

Ms. Coffey's email also included a request for a fee waiver on the grounds that the records she requested would be "meaningfully informative to the public with respect to the Bureau's operations and activities in connection with its Wild Horses and Burro Program." *Id.* at 2. She explained that there was "no information available publicly" about the topic of her

4

request, and that she intended to "disseminate the information"
she received through her FOIA request "to a large segment of the
public at large" via online news articles and radio interview
broadcasts across the United States. *Id.* at 2-4; *see also* 5
U.S.C. § 552(a)(4)(A)(iii) (requiring reduction or waiver of
fees "if disclosure of the information is in the public interest
because it is likely to contribute significantly to public
understanding of the operations or activities of the government
and is not primarily in the commercial interest of the
requester").

The Bureau acknowledged receipt of Ms. Coffey's FOIA
request by email on April 28, 2015. Witt Decl. ¶ 3, ECF No. 15-
2. In a letter dated May 26, 2015, the Bureau denied Ms.
Coffey's fee-waiver request on the grounds that Ms. Coffey had
"fail[ed] to articulate how . . . [she] would convey the
information to a reasonably broad audience of persons interested
in the subject and how that disclosure w[ould] contribute to
their understanding, as opposed to [her] individual
understanding." Witt Decl. Ex. 3 at 3. The Bureau informed Ms.
Coffey that the estimated cost of processing her request was
$2,440.00. *Id.* Ms. Coffey mailed a check to the Bureau for that
amount on June 1, 2015. Coffey Decl. ¶ 13.

By letter dated September 30, 2015, the Bureau responded
substantively to Ms. Coffey's FOIA request, producing 671 pages

of responsive documents. Witt Decl. ¶ 23. Of those 671 pages, 240 pages were partially withheld under 5. U.S.C. § 552(b)(6), pursuant to which an agency need not produce "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Witt Decl. ¶ 23.

On November 9, 2015, Ms. Coffey submitted an administrative appeal of the Bureau's response to her FOIA request. *Id.* ¶ 24. At the same time, she also requested a refund of the $2440.00 fee that she had paid on the ground that the agency had failed to meet the statutory deadline in responding to her request. Coffey Decl. ¶ 13; *see also* 5 U.S.C. § 552(a)(4)(A)(viii)(I) (prohibiting an agency from assessing search or duplication fees "if the agency has failed to comply with" applicable time limits). Although the Bureau "determined that it [wa]s appropriate to refund Plaintiff's fee" as a result of its delay in processing the FOIA request, *see* Witt Decl. ¶ 11, the Bureau did not refund Ms. Coffey's fee until February 21, 2017, *see* Coffey Decl. ¶ 13. As of the filing of this suit on April 7, 2016, the Bureau was still "in the process of preparing its response to Plaintiff's appeal." Witt Decl. ¶ 25.

## II.     LEGAL STANDARD

FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is

made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). "To fulfill its disclosure obligations, an agency must conduct a comprehensive search tailored to the request and release any responsive material not protected by one of FOIA's enumerated exemptions." *Tushnet v. United States Immigration & Customs Enf't*, No. 15-CV-00907, 2017 WL 1208397, at *4 (D.D.C. Mar. 31, 2017).

The "vast majority" of FOIA cases can be resolved on summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court may grant summary judgment only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citation omitted). Under FOIA, the underlying facts and inferences drawn from them are analyzed in the light most favorable to the FOIA requester, and summary judgment is appropriate only after the agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp.

32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation and internal quotation marks omitted). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d 1197 at 1200 (citation omitted).

III.    **ANALYSIS**

The central issue on summary judgement is the adequacy of the Bureau's search.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir.

1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994). Where a plaintiff challenges the adequacy of an agency's search, the question for the court is "'whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'" *Judicial Watch, Inc. v. United States Dep't of State*, 681 Fed. Appx. 2, 4 (D.C. Cir. 2017) (quoting *SafeCard Servs.*, 926 F.2d at 1201). In other words, the adequacy of a search is "generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

The adequacy of an agency's search is "measured by a 'standard of reasonableness' and is 'dependent upon the circumstances of the case.'" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)(citations omitted). To meet its burden at summary judgment, an agency may provide "'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched.'" *Iturralde*, 315 F.3d at 313-14 (citation omitted). Any factual assertions in such an affidavit will be accepted as true unless the requesting party submits affidavits or other documentary

evidence contradicting those assertions. *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 148 (D.D.C. 2010) (citing *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992)).

Ms. Coffey challenges the adequacy of the Bureau's search on three grounds. The Court examines each argument in turn.

### A. Follow-Up Searches

Ms. Coffey first contends that the agency failed to conduct "follow-up" searches for documents purportedly attached to or referenced in records produced by the Bureau. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Pl.'s Opp.") at 7-9, ECF No. 18. In particular, Ms. Coffey points to four instances in which "responsive records which she was provided expressly refer to an attachment in the body of an email, and where the additional 'attached' responsive records were not ever provided." *Id.* at 7. Ms. Coffey also points to "six additional instances of . . . records that were expressly cross-referenced within the materials provided, that have not yet been provided to Plaintiff by the BLM." *Id.* at 8. Ms. Coffey argues that the agency "had a legal duty to follow-up on each of the . . . referenced leads in the records" and "has clearly violated that duty by failing to undertake any follow-up search actions reasonably calculated to located these additional responsive records." *Id.* at 9.

In response, the Bureau submitted a supplemental declaration. *See* Def.'s Opp. to Pl.'s Cross-Mot. for Summ. J. and Reply in Supp. of Mot. for Summ. J. ("BLM Reply"), Supplemental Declaration of Ryan Witt ("Supp. Witt Decl."), ECF No. 21-1.[1] In this declaration, Mr. Witt avers that he "reviewed the specific examples Plaintiff provided in her filing of **attachments** that she alleged were in scope and not included in the response." *Id.* ¶ 7 (emphasis added). According to Mr. Witt, those documents "were not produced in the search, which was reasonably calculated to produce all documents." *Id.* The Bureau argues that it need not do anything more, as it "is not required to speculate about potential leads." BLM Reply at 4 (quoting *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996)).

The Bureau's argument misses the mark. Where "specific records, photographs, or attachments are referenced in [an agency's] documents, it is no longer 'mere speculation' that the files exist." *Hall v. C.I.A.*, 881 F. Supp. 2d 38, 61-62 (D.D.C.

---

[1]   Although this declaration was attached to the Bureau's reply memorandum in support of its motion for summary judgment, the Court can "'rel[y] on supplemental declarations submitted with an agency's reply memorandum to cure deficiencies in previously submitted declarations'" where a plaintiff has not challenged the supplemental declaration. *See Walston v. United States Dep't of Def.*, 238 F. Supp. 3d 57, 64 (D.D.C. 2017) (citing *DeSilva v. U.S. Dep't of Housing and Urban Dev.*, 36 F. Supp. 3d 65, 72 (D.D.C. 2014)).

2012). Here, the Bureau produced documents that reference other specific, potentially responsive records that have not been produced. Indeed, Ms. Coffey's opposition brief and accompanying declaration highlight ten specific instances in which produced documents reference missing records. *See* Pl.'s Opp. at 7-8; Coffey Decl. ¶¶ 10-11. Moreover, the Bureau's conclusory supplemental declaration – which, in two sentences, merely states that the agency reviewed the examples of missing "attachments" provided by plaintiff and found them to be outside the scope of her FOIA request "as written," *see* Witt Decl. ¶ 7 – is not sufficient for the Bureau to meet its burden on summary judgment with respect to these missing documents. The agency's supplemental declaration, for example, nowhere mentions the six instances of records "that were expressly cross-referenced within the materials" produced. *See* Pl.'s Opp. at 8. Rather, it only states that the agency reviewed the identified "attachments" to emails. Supp. Witt Decl. ¶ 7.

The Bureau also suggests that its search was adequate because these "extrinsic items" – i.e., the attachments and documents cross-referenced in produced emails – "go beyond the scope of Plaintiff's very specific document request." BLM Reply at 4. Although the Bureau does not elaborate on its interpretation of the scope of Ms. Coffey's request or on why these particular documents fall outside of that scope, the Court

notes that an agency has a duty to construe FOIA requests liberally, *see Nation Magazine v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995), and Ms. Coffey's request clearly encompasses "all emails," *see* FOIA Request at 1. To the extent the agency intends to argue that the attachments should be treated as separate "records" from the emails to which they were attached, the Court rejects this approach. Many of the emails cited by Ms. Coffey make explicit reference to, or include discussion of, the missing attachments. *See, e.g.*, Coffey Decl. Ex. B at 4 ("Attached are the completed sales applications for Turning Pointe Donkey Rescue and Crossroad Donkey Rescue. There is also an approved proposal if Turning Pointe Donkey Rescue purchases more than four sale eligible burros."); *id.* at 6 ("Attached is a pdf file with Wendy Bierling's sale questionnaire, signed bill of sale, and receipt for payment of the horses."). Although the Court need not adopt a *per se* rule that an email and its attachment must be treated as a single record, the Court finds that many of these attachments should reasonably be considered part and parcel of the email by which they were sent. *See, e.g.*, *Parker v. United States Dep't of Justice, Office of Prof'l Responsibility*, No. 15-CV-1070, 2017 WL 3531507, at *3 (D.D.C. Aug. 16, 2017) (concluding that a draft attachment and the letter to which it was attached should reasonably be treated as a single "record"

for purposes of FOIA where the letter "itself touche[d] on the subject matter of the attachment and refer[red] the recipient to examine its contents"). In such instances, FOIA "compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 677 (D.C. Cir. 2016). As such, the Bureau must either produce any attachments to responsive emails or make a showing that the attachments fall within a statutory exemption from disclosure.

In short, although the Bureau is not obligated to search for every record "referenced in the responsive documents that were released," *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007), the Bureau must demonstrate that it conducted a reasonable, good-faith search for the cross-referenced documents identified by Ms. Coffey and that it (1) produced those documents; (2) was unable to locate those documents; (3) withheld those documents under an applicable FOIA exemption; or (4) determined that those documents were unresponsive to Ms. Coffey's FOIA request, liberally construed. In addition, the Bureau must search for attachments to emails already deemed responsive and either produce them or explain why they are exempt from disclosure.

## B. Search Terms

Ms. Coffey next contends that the Bureau's search was inadequate because the agency failed to search for the term "proposal" in responding to the FOIA request. Pl.'s Opp. at 10. Because Ms. Coffey's request squarely sought records pertaining to "proposals" for the sale or purchase of wild horses and burros – and because the agency itself uses the term "proposal" to describe the form application that must be submitted by a purchaser seeking to obtain four or more animals – Ms. Coffey argues that the Bureau's search improperly "fail[ed] to track the subject matter of records expressly sought in [her] FOIA request." *Id.* at 9-11.

The Bureau acknowledges that it did not include the word "proposal" in its search terms, but argues that its failure to do so does not render its search inadequate. BLM Reply at 5. According to the Bureau, although Ms. Coffey's FOIA request sought records related to "proposals for selling/buying wild horses and burros, . . . very few individuals or organizations interested in purchasing horses or burros submit proposals." Witt Decl. ¶ 14. Rather, the Wild Horse and Burro Program office "routinely receives inquiries in communications that do not include the word 'proposal,'" and the Bureau itself "does not exclusively use the word 'proposal' in discussing sale and adoption inquiries." Supp. Witt Decl. ¶ 6. Thus, the Bureau

submits that the search terms actually used – "sales, special sales, buy, buying, sell, selling, transportation, long term holding, holding facility, transportation, and truck," Witt Decl. ¶ 18 – were, in fact, "much broader and retrieved documents that were responsive to the request that did not include the word proposal," Supp. Witt Decl. ¶ 6.[2]

In general, "[f]ederal agencies have discretion in crafting a list of search terms that 'they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request.'" *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (citation omitted). So long as the "search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) (citation omitted); *see also Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in

---

[2]    Although Ms. Coffey's FOIA request also specified four additional search terms – "wild horses, wild burros, horses, and burros" – the Bureau's search did not use these terms because "these words appeared on every email and correspondence" sent by many Bureau employees as part of the signature block. Witt Decl. ¶¶ 18, 21, 22. Plaintiff does not challenge the Bureau's omission of these terms.

which the courts should attempt to micro manage the executive branch.").

Based on the Bureau's representations, the Court concludes that the Bureau's decision not to use the term "proposal" to search for records responsive to Ms. Coffey's FOIA request was reasonably calculated to find responsive materials. Although Ms. Coffey specified a host of search terms for the agency to use in conducting its search, it is significant that this list did not include the term "proposal." *See* FOIA Request at 1. Ordinarily, "[a]n agency presented with a FOIA request which expressly prescribes a set of search terms . . . is not required to conceive of additional search terms that might produce responsive documents." *Leopold v. Dep't of Justice*, 130 F. Supp. 3d 32, 45 (D.D.C. 2015). Rather, it is "reasonable for an agency to presume that [the FOIA requester] has selected them because the requester believes that those terms are reasonably calculated to identify responsive documents." *Id.* If "proposal" was an obvious search term for the Bureau to use, Ms. Coffey could have identified it herself in her FOIA request.

Moreover, Mr. Witt has stated in his supplemental declaration that, although the agency did not search for the term "proposal," the terms that it did use were "much broader and retrieved documents that were responsive to the request that did not include the word proposal." Supp. Witt Decl. ¶ 6

(further explaining that documents potentially responsive to the substance of Ms. Coffey's FOIA request are "not limited to formal documents styled as either applications or proposals, but routinely take the form of simple inquiries by email"). Indeed, at least some of the documents produced do not appear to contain the term "proposal" at all. *See, e.g.*, Coffey Decl. Ex. B at 1-2 (referring to "sale paperwork," "sale questionnaire," and "application for 2 sale burros" in discussing the purchase of burros but not using the term "proposal"). For all these reasons, the Court rejects Ms. Coffey's challenge to the sufficiency of the Bureau's search terms.

### C. Scope of the Bureau's Search

Finally, Ms. Coffey asserts that there is "undisputed evidence in the record suggesting that the BLM improperly limited its search for responsive records to those records located within the BLM's Wild Horse and Burro Office in Washington, D.C." as opposed to "other BLM offices located throughout the nation." Pl.'s Opp. at 11.

Ms. Coffey's argument appears to misread the Bureau's declaration. Mr. Witt attests that he "determined that all responsive records would be located in BLM's Wild Horse and Burro Office (WHBO) because the WHBO is the sole office responsible for proposals regarding selling/buying wild horses and burros." Witt Decl. ¶ 13. Nowhere does Mr. Witt suggest that

the agency's search for records was contained to the Wild Horse and Burro Office *located in Washington, D.C.* To the contrary, Mr. Witt made clear in his initial declaration that the agency searched the email records of Debbie Collins, *see id.* ¶ 20, an employee who, according to Ms. Coffey's own FOIA request, worked "in the Oklahoma Field Office," *see* FOIA Request at 1. Moreover, to the extent any ambiguity as to the geographic scope of the Bureau's search remains, Mr. Witt's supplemental declaration provides even more clarity:

> Plaintiff claims that only the Washington, D.C. location of the Wild Horse and Burro Program Office (WHBO) was searched. This is incorrect. We searched *all locations* within the WHBO that were reasonably calculated to have records responsive to Plaintiff's request, including WHBO locations outside of Washington, D.C.

Supp. Witt Decl. ¶ 5 (emphasis added). An agency may limit its search to places "likely" to contain responsive documents, *see DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015), and the Bureau did precisely that by searching for records within the Wild Horse and Burro Program Office.

In her reply, Ms. Coffey pivots, arguing that even if the agency did search other offices, it is still not entitled to summary judgement on this issue because its declarations "fail[] to list or describe any of those other search locations, or the agency system of records or search methodologies allegedly

19

employed [in] those other locations." Pl.'s Reply in Supp. of Cross-Motion for Summ. J. at 3, ECF No. 23.

This argument fares better. When a FOIA requester identifies a "gap" in the agency's search, the agency must "fill" the "gap" "to carry its burden as to the adequacy of its search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 515 (D.C. Cir. 2011). In particular, the agency should "inform the Court and plaintiff[] whether [any other records] of any potential relevance exist; if so whether their responsive material is reasonably likely to add to that already delivered; and, if these questions are answered affirmatively, whether there is any practical obstacle to searching them." *Id.* "Without such an explanation, and even if the Court can make 'reasonable guesses about the answers to these questions,' the Court cannot award the agency summary judgment on the adequacy of its search." *Davidson v. United States Dep't of State*, 206 F. Supp. 3d 178, 191 (D.D.C. 2016) (quoting *Negley v. FBI*, 169 Fed. Appx. 591, 595 (D.C. Cir. 2006)).

Here, Ms. Coffey identified a specific "gap" in the Bureau's search – i.e., she points to "additional locations, and additional email addresses" that should have been searched for responsive records. Pl.'s Opp. at 11; *see also* Coffey Decl. Ex. C. Although the Bureau states that it searched "WHBO locations outside of Washington, D.C.," it has not adequately explained

which other offices were searched, the type of search performed, or the names of any custodians that were searched. Nor has the agency explained whether the additional custodians identified by Ms. Coffey are likely to have responsive material and, if so, whether there is any practical obstacle to searching for those materials. Accordingly, on this record, the Court cannot determine the adequacy of the Bureau's search for records in Wild Horse and Burro Program offices outside of Washington, D.C. *See, e.g.*, *Aguirre v. S.E.C.*, 551 F. Supp. 2d 33, 61 (D.D.C. 2008) (finding that the agency's search was inadequate where, although agency "list[ed] the specific offices queried for documents," it "fail[ed] to describe in detail how each office conducted its search").

## IV. CONCLUSION

In view of the foregoing, and because material issues of fact exist as to the adequacy of the Bureau's search, the Court directs the Bureau to supplement the record as appropriate pursuant to the Order accompanying this opinion.

Under the circumstances, the Court will not address at this time the issue of whether Ms. Coffey is a prevailing party within the meaning of the FOIA statute. 5 U.S.C. § 552(a)(4)(E).

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**September 29, 2017**